# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs July 27, 2007

## STATE OF TENNESSEE v. ROGER GENE DAVIS

**Direct Appeal from the Criminal Court for Knox County**
**No. 80900     Ray L. Jenkins, Judge**

————————————

**No. E2006-02045-CCA-R3-CD** - Filed August 27, 2007

————————————

A Knox County jury convicted the Defendant of aggravated assault, one count of theft, Class D felony theft, and misdemeanor vandalism, and the trial court sentenced him to an effective sentence of thirteen years.  On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions for aggravated assault and theft; (2) the trial court improperly allowed testimony that the Defendant had kidnapped the victim the night before this incident; and (3) the trial court improperly imposed consecutive sentences. Finding that there exists no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the Appellant, Roger Gene Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; Patricia Cristil, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

In this case, the Defendant stabbed the victim four times at his ex-wife's house and then left the house in his ex-wife's car.  At the Defendant's trial, the following evidence was presented:  Karen Janine Davidson, the Defendant's ex-wife, testified that she was living in a duplex with her daughter in November of 2003 when the Defendant, from whom she was already divorced, called her and told her that he had her mother's antique watch and some other items of hers that he wanted to return to her.  The Defendant wanted to meet her down the street from her

house in the Wal-Mart parking lot.  When she got there, he had a gun and a knife and made her get into his car where she stayed until the next morning. She said that, eventually, she got him to take her back to her car so that she could go home.  The Defendant would not allow her to drive her own car, but he drove her in her car back to her house.  She did not invite the Defendant inside, but he came inside the house anyway.

Davidson testified that, at the time, she was friends with a man named Jimmy Lovell, who was welcome at her home anytime.  Between fifteen and thirty minutes after Davidson and the Defendant arrived at her house, Lovell and his friend Greg Brown came to her house, and Lovell knocked on the patio door.  Davidson said that she was standing in the living room, when she answered the door.  When she did so, the Defendant, who had a three to four inch serrated knife with him, ran into her bedroom.  Davidson assumed that Lovell saw the Defendant because he also went to the bedroom.  Davidson recalled that Lovell had previously given her daughter a small, two foot bat for protection, and Davidson kept the bat in her bedroom.  When the men were in the bedroom, Davidson heard a "scuffle."  Lovell then came into the living room and told her that he had been stabbed, and she saw blood.  She took his coat off and saw three stab marks in his back and one in his arm, and he was bleeding profusely.

Davidson testified that the Defendant then came out of the bedroom with the bat and was threatening her, trying to make her leave with him.  Davidson ran to the street to find someone to call 911, and the Defendant chased her with the bat.  She ran back onto her porch, and the Defendant was still threatening her.  Lovell was still on the porch, and he told the Defendant that the Defendant was not going to leave with Davidson.  The Defendant then got into her car without her permission and drove away.  Davidson estimated that the value of her car was over $10,000.  That night, Davidson went to a shelter, and, when she recovered her car the next day, she saw that the windshield had been broken, the word "bitch" had been scratched into the spoiler, and there were cigarette burns and a tear in the seat.

On cross-examination, Davidson conceded that she did not see anyone damage her car.  She also agreed that Lovell had a large coat on when he arrived at her house, and she did not see if he had anything under his coat.  She said that she did see the Defendant in her bedroom closet when Lovell first went back to her room and got into a confrontation with the Defendant.  Davidson left to get the phone because she knew that this was not a good situation.  She said that the two men were in the room for ninety seconds at the most when Lovell came out hurt.  She agreed that she knew that the Defendant had the keys to her car when she told him to leave.  Davidson also said that the Defendant never hit her or Lovell with the bat.

Jimmy Lovell testified that he was dating Davidson in November of 2003.  He did not know the Defendant at the time, but he was aware that the Defendant had previously been married to Davidson.  On the morning of November 21, 2003, he drove his car, with Greg Brown as a passenger, to Davidson's house around lunchtime to get his personal things that were in her bedroom and to check on her.  He said that he went up to the sliding glass door, did not see anyone inside, and knocked on the door.  Davidson answered and told him that the Defendant was there, and Lovell told her that he was just there to get his stuff.  When Lovell turned the corner to the bedroom, the Defendant came out of the closet after him.  He had a small

2

bat in his hand, and Lovell grabbed the bat to stop him from swinging it at him. The Defendant tried to push Lovell onto the bed, and then the Defendant stabbed him in the back of the right lung. Lovell said that he did not see the knife before he was stabbed.

Lovell testified that he made it from the bedroom to the porch. There, he heard the Defendant trying to make Davidson go with him, and she told him that she did not want to go. Lovell identified a picture showing where he was stabbed in the back three times. Lovell went to the hospital, where doctors told him that his lung was hanging out of his back.

On cross-examination, Lovell said that Davidson appeared "terrified" when he arrived at the house. Lovell testified that he knew that the Defendant was in the bedroom before he went back there, and he went to the bedroom anyway to get his clothes. Lovell agreed that he was able to get the bat from the Defendant, and he hit the Defendant with the bat.

Gregory Brown testified that he is Jimmy Lovell's friend, and he was with Lovell when Lovell went to pick up his clothes. Brown sat in the car until he saw Lovell bleeding on the porch. Brown went to a neighbor and asked the neighbor to call an ambulance.

The Defendant testified that the night before this incident, Davidson wanted to go "running around and stuff," which they did together for about twelve hours. Davidson then wanted to go back to her house with the Defendant, but she did not want the Defendant's car there because her neighbors were home, and she did not want them to know that the Defendant was there. He said that it was her decision to take her car back to her house. When they arrived at her house, Davidson got into the bathtub and then prepared something for them to eat. The Defendant denied that he threatened her or that she had asked him to leave. The Defendant testified that Davidson was still in the bathtub when Lovell drove up to the house.

The Defendant testified that Lovell "pounded" on the door, and the Defendant went to the bedroom because he knew that Lovell was "going to start something, so [he'd] have to finish it." When in the bedroom, the Defendant saw a bat lying on the floor. He went into the closet to hide, but as soon as he opened the closet door Lovell put his hands on him and started wrestling with him. The Defendant said that Lovell picked up the bat and hit him in the eye with it. The Defendant tried to grab the bat, and he pulled out the knife that he carries with him and "just started going at him." As soon as Lovell fell on the bed, he let go of the bat. The Defendant said he got up and had the bat and the knife in his hands. The Defendant stood there and watched Lovell to make sure he was not going to fight anymore. The Defendant might have said a few words to Davidson after this, but he did not recall. The Defendant said Davidson kept telling him to leave, and he still had her car keys, so he left in her car because his car was not at the house.

On cross-examination, the Defendant testified that he had previously told Lovell that "if he ever come around, you know, starting something, then I'll finish it for you." The Defendant asserted that Lovell struck him first. The Defendant said that he never picked up the bat because he "already ha[d] a weapon [that was] much more efficient than [a] bat." The Defendant testified that one of the victim's stab wounds came from the victim "mainly" falling on his knife.

3

The Defendant said that the victim let go of the bat after the victim fell on the bed and onto the knife. The Defendant explained that the victim got three wounds because he "must have struggled with the wrong man, I reckon." The Defendant agreed that he had been previously convicted of robbery, attempted burglary, theft, and burglary.

Based upon this evidence, the Defendant was found guilty of aggravated assault, one count of Class D felony theft, and one count of misdemeanor vandalism.

## II. Analysis

On appeal, the Defendant alleges that: (1) the evidence is insufficient to sustain his convictions for aggravated assault and theft; (2) the trial court improperly allowed testimony that the Defendant kidnapped the victim the night before this incident; and (3) the trial court improperly imposed consecutive sentences.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his convictions for aggravated assault and for theft. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

4

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). Importantly, the credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. *Bland*, 958 S.W.2d at 659.

A person commits aggravated assault who "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101[(a)(1)], and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1) (2003). A person commits assault who: (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another, and a reasonable person would regard the contact as extremely offensive or provocative. T.C.A. § 39-13-101(a). Tennessee Code Annotated section 39-11-106(5)(B) defines deadly weapon as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Serious bodily injury means bodily injury which involves: "(A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." T.C.A. § 39-11-106(a)(34).

In the case under submission, the Defendant was charged and convicted under both theories of aggravated assault, i.e. that he caused the victim serious bodily injury and that he used or displayed a deadly weapon. The trial court subsequently merged the two verdicts into one conviction. The evidence is sufficient to sustain both theories and thus the conviction for aggravated assault. The evidence at trial proved that the Defendant attacked the victim first with a bat. The victim wrestled the bat away from the Defendant, and the Defendant then "just started going at him," stabbing him four times with a three to four inch serrated knife, which is clearly a deadly weapon. Further, the victim suffered four stab wounds, one of which was so severe that his lung was protruding from his back. This constituted a substantial impairment to his lung, which is an organ, and constitutes serious bodily injury as defined by our statute.

The Defendant seemingly contends that his actions in attacking the victim were justified because, he alleges, he was acting in self defense. The jury rejected his testimony that the victim

attacked him with a bat first and that he pulled his knife and stabbed the victim four times to defend himself. It was within the prerogative of the jury to reject the claim of self defense. It is well settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. 1997) (citing *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)). The jury simply did not believe the Defendant's version of the events that led to the stabbing. The evidence was sufficient for a rational juror to conclude beyond a reasonable doubt that the Defendant was guilty of aggravated assault.

Pursuant to Tennessee Code Annotated section 39-14-103, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Theft of property is a Class D felony if the value of the property obtained is between $1000 and $10,000. T.C.A. § 39-14-105(3) (2003). The evidence at trial proved that the Defendant used Davidson's keys to take her car from her home without permission. Davidson estimated the value of her car to be over $10,000. The jury, by returning its verdict, found the value of the car to be between $1000 and $10,000. The evidence at trial is sufficient to sustain the Defendant's conviction, and he is not entitled to relief on this issue.

## B. Evidence of Kidnapping

The Defendant next contends that the trial court erred when it allowed evidence that the Defendant had, the night before this incident, forced the victim into his car using both a gun and a knife, forced her to ride around with him, and did not allow her to go home until the next morning.

In support of this argument, the Defendant makes no citations in his brief to the record or to any relevant legal authority. The Rules of Appellate Procedure require that citations to authority and references to the record be included in the argument portion of the brief. Tenn. R. App. P. 27(a)(7). The rules of this Court direct waiver of issues not supported by citation to authorities or appropriate references to the record. *See* Tenn. R. Ct. Crim. App. 10(b). Therefore, this issue is waived.

## C. Sentencing

The Defendant next contends that the trial court erred when it ordered that his sentences be served consecutively. At the Defendant's sentencing hearing, the following evidence was presented: The parties agreed that the two aggravated assault charges merged and that, because it was a class C felony and the Defendant was a Range II offender, the applicable sentence range was six to ten years. Further, they agreed that the theft conviction was a class D felony with a potential sentence of between four and eight years. Finally, they agreed that the Defendant's conviction for vandalism was a misdemeanor, with a maximum potential sentence of eleven months and twenty-nine days.

The trial court ordered that the Defendant serve his sentences consecutively, finding that

he was an offender whose record of criminal activity was extensive. The trial court then sentenced the Defendant to eight years for the aggravated assault conviction, to five years for the theft conviction, and to eleven months and twenty-nine days for the misdemeanor vandalism conviction. The trial court ordered that the sentences for aggravated assault and theft run consecutively to each other and that the misdemeanor sentence run concurrently with the other sentences, for an effective sentence of thirteen years.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001); *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a *de novo* review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (1997 & Supp. 2002); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2003), Sentencing Comm'n Cmts.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the case under submission, the record demonstrates that the trial court properly considered relevant sentencing principles. Accordingly, we apply the presumption that the trial court's sentencing determinations are correct. *See* T.C.A. § 40-35-401(d).

Pursuant to Tennessee Code Annotated section 40-35-115(a) (2003), if a defendant is convicted of more than one criminal offense, the court shall order the sentences to run either consecutively or concurrently. The trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that one or more of the seven criteria enumerated in Tennessee Code Annotated section 40-35-115(b) apply. If none of the criteria in subsection (b) apply, the "[s]entences shall be ordered to run concurrently . . . ." T.C.A. § 40-35-115(b). One criterion listed in Tennessee Code Annotated section 40-35-115(b), is that the defendant is "an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2) (2003).

In addition to the specific criteria in Tennessee Code Annotated section 40-35-115(b), consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed."  T.C.A. §§40-35-102(1) and -103(2); *State v. Imfeld*, 70 S.W.3d 698, 707 (Tenn. 2002).

In the case under submission, the testimony at trial and presentence report proved that the Defendant had previous convictions for robbery, attempted burglary, theft, and burglary.  This was a sufficient basis upon which the trial court could rely when finding that the Defendant had an extensive criminal history so as to justify the imposition of consecutive sentences.  Further, the Defendant's sentence of thirteen years is justly deserved in relation to the seriousness of his offense and is no greater than that deserved for the offense committed.  Thus, the Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the foregoing reasoning and authority, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE